My name is Darrell Parker. It's our contention in this case that there were so many material issues of fact throughout every single cause of action that plaintiff brought that summary judgment was inappropriate. And additionally, your honors, given the odd procedural history of this case with respect to obtaining service over defendant Matt Myers, that the district court abused its discretion in denying plaintiff both his request to have the pre-trial order modified so that we could take Myers' deposition and in denying us our leave to amend. With very few exceptions, the law on each claim is pretty well settled. There's not any novel areas of law that the court needed to consider. This is pretty much a fact-specific case. Is this a 1983 case? Yes, it is. It's not brought under 1985? No. Although I would admit that the complaint, as it was originally filed, did have an error and said 1985. But plaintiff has no evidence whatsoever that any of the instances involved in this case were racially motivated. And to the extent plaintiff alleges a conspiracy, he alleges it under 1988 and not under 1985. Okay. I want to make one point about the conspiracy claim that I don't believe is contained in our papers. The argument pretty much that plaintiff makes or appellate makes with respect to the conspiracy is that there was a conspiracy amongst all of the people involved in the action, particularly the hotel employees. We would concede that at this stage, without having taken Officer Myers' deposition, that the evidence of a conspiracy is just among the hotel employees and that the evidence that we have that there possibly was a conspiracy involving law enforcement was that Reggie Oden was a former law enforcement officer and he knew both Myers and Lee by sight. I would like to be able to represent to the Court that I know exactly why. The only thing that I do know is that the law enforcement was not involved in this case. I searched the criminal file of the criminal attorney. I searched the court file in the City of Yakima. I went through the disk that the court clerk gave me, and the actual reason that the case was dismissed is not contained. Well, was there an order of dismissal? Could not find an order. Or a minute order? Could not find a minute order. All I could find was that there was a suppression hearing. There was testimony taken at the suppression hearing by both officers. Following the suppression hearing, the case was dismissed. Obviously, we would argue that if there was a suppression hearing and the basis of the suppression hearing was that there was an unlawful entry into the hotel room, that that would be raised judicata or collaterally stop them from denying it in the civil case. But currently, we don't have that information. All right. The facts are completely laid out in Appellant's brief, but there's one issue that I don't think that I addressed properly in the brief, and that is with respect to the officer's claim that they have qualified immunity with respect to entering the hotel room under a theory of implied consent to enter. I've never been able to find a Ninth Circuit case that allowed implied consent to enter either a private residence or a hotel room. The distinction that I want to make here is that the case of United States v. Griffith, which counsel appears to rely on, there was a specific request by the officers to enter the premises. And so in response to the request, the opening the door and stepping back could be possibly interpreted as consent. In this case, there was no request by the officers to enter the hotel room. Appellants stepped back to put out a cigarette. That cannot be interpreted as a response to any particular type of request. In addition, the officers in this case pushed the door open to enter. What is your response to the alternative argument that the prior dangerous acts by your client with his gun created an exigency that they could go into the room to look for a gun since he had access to the room? Well, first, Your Honor, there's no evidence that that's what the officers did. If there was an exigency created by a fear that perhaps he was armed or perhaps had used the gun in an improper manner, the officers would have drawn their weapons. In fact, the conversation after they entered the room was casual. They sat on the bed and discussed it. They took plaintiff out to be viewed. If we could create an exigency simply by the fact that a person may be armed and any time you have a suspect who is potentially armed or who has committed a crime that's armed, you could do away with the warrant requirement and simply enter the premises on that basis. In this case, the officers simply could have had Mr. Ducey step out of the room. The officers could have waited until he left the room. They created the exigency by going into the room because if they did not go into the room, there would be no exigency. The second argument that we have is that the district court abused its discretion in denying the modification of the pretrial order. Under Rule 26, even without a discovery request, information including the names, address, and telephone number of witnesses should be disclosed to all the parties. And according to the same pretrial order that we were asking to be modified, by December 31st, we should have been provided with the names, address, and telephone number of Officer Myers. At the time that the lawsuit was filed, we did not know Officer Myers was not a member of the Yakima Police Department. So naturally, our attempts to serve him would be through the Yakima Police Department. Once we realized that he was not a member of the Yakima Police Department, certainly we believed that his address would be forthcoming during the initial disclosure process. That did not happen. When we attempted to obtain his address through discovery, the objection was that his address was attorney work product because it was something that was generated. Was there – wasn't there a deadline that the court, you know, set up a schedule and a deadline for amending the pleadings? Yes, Your Honor. And then Ducey waited until the defendants moved for summary judgment before – and he asked to amend the pleadings, and that was well after that deadline. That's correct, but it's actually a coincidence that it occurred at that point because the – as I was speaking of the procedural history, we did – we were not able to serve Officer Myers until July. Officer Myers, through his counsel, informed us that he filed bankruptcy on July 26th. We attempted then to take his deposition, and that was denied because of the bankruptcy. Discovery closed on August 31st. Why couldn't you serve him until July? We didn't have his address. Well, you've got investigators, you know. We were attempting – People's addresses. Sure, but we were attempting to obtain his address. Certainly, sending out Discovery, asking the city of Yakima what's his last known address and what address do they have for him would be a proper way of trying to obtain his address. In addition, he was a very, very critical witness. You could have done that early in the game, right? Yes. All right, but you didn't do that. Yes, we did. When did you do it? Until there's a Discovery conference. The parties are prohibited from conducting Discovery. After the Discovery conference, we sent out interrogatories asking for the address of Matt Myers. They responded by objecting, saying that that's attorney work product. The objections continued until we did a letter brief asking the court to compel the response. Even after we did that, it was a certain amount of time before we actually got an address that we could verify was his, because we continued to pursue the addresses that were originally given to us, and we were unable to serve him. We served him as soon as we were able to serve him. In addition, Your Honor, by the time that the summary judgment motion was filed, it was just a coincidence that we happened to file a motion for leave to amend. And we did not file the leave to amend motion in response to the summary judgment motion. It just coincidentally occurred almost on the same day. And we did not request a modification in response to the summary judgment motion. Let me ask you this. Let me ask you this. What facts do you rely on to establish ulterior motive for the abuse of process claim? The incident with St. Martin coming into Plaintiff's hotel room, trespassing, the fact that Plaintiff was going to file charges and press charges against St. Martin. The fact that this incident happened early in the morning. How is that abuse of process? Well, it's been.  I think that abuse of process, Your Honor, in this particular case, is not really an accurate description of what the claim is. The claim is more malicious prosecution. The process was not used improperly. That really is not an accurate statement of what the claim is. What we're claiming is that the process itself was used maliciously. That the entire prosecution or the entire calling of the police and implementing this prosecution of Mr. Ducey was as a result of retaliation for him for pressing charges against St. Martin for entering his hotel room without his permission. Well, what tribal issues of fact were presented whether the hotel through its employees instituted criminal proceedings against Ducey out of malice? It was the hotel through Mr. Bailey who called the police. He enticed a felon to stay at the hotel past his checkout time. According to the officers, they did not get to the hotel until close to 3 o'clock, maybe even after 3 o'clock. Mr. Bailey claimed that the individual employees, Becky Pugh and Reggie Oden, just happened to be at the hotel that day on their day off. They claimed that they were summoned to the hotel at 10 o'clock in the morning. When Mr. Ducey was in his hotel room, Bailey asked him to come down. He asked him, is there anything that can be done? He's tapping on an envelope indicating that perhaps he was going to extend some sort of favor to him in exchange for him dismissing the claim against St. Martin. And according to Mr. Ducey, some of these things happened. That's kind of far-fetched, isn't it? Well, it may be far-fetched. What do you think was in there, money or a $1,000 bill? It could have been money. It could have been just the implication that I'll extend you some sort of favor. But Mr. Ducey's declaration and his deposition testimony indicate that none of the events occurred the way these people say these events occurred. And if these people are aware that these events did not happen, if Reggie Oden is aware that these events did not happen the way he says they happened, and he goes ahead and he asks the court to prosecute anyway, that would be malicious prosecution. Whether or not he's telling the truth or whether or not Mr. Ducey's telling the truth is not something that can be decided on summary judgment. Well, on this false imprisonment and false arrest claim that you have in your complaint, that claim, as far as prison status of the case is concerned, is directed only at Officer Lee. Is that correct? No. No? No. It's directed at the hotel and the employees. Well, isn't your argument on appeal just directed only to Officer Lee? No. No. The first argument is directed toward the employees. They set in motion a series of events that caused the arrest. Did you make any mention in your appeal of West Coast, of the West Coast defendants, with relation to the false imprisonment and false arrest claim? It's the first claim. It's the first issue on appeal. Well, yeah, but I – so it's not directed towards Officer Lee alone. Is that what you're saying? Correct. Officer Lee – Why don't you talk about qualifying immunity vis-à-vis Officer Lee? You've got a lot of issues. There's no qualified immunity if the law was clearly established at the time. The Ninth Circuit has never recognized this implied consent to enter a private residence. And as I pointed out, the only case that they cite in support of that claim is a Seventh Circuit case in 1976 called United States v. Griffith. And in that case, again, there was a specific request by the officers to enter the premises. And that could cause, perhaps, officers to believe that by stepping back and opening the door, that was implied consent. Here, there's no implied consent because there was no request, and they pushed the door open. It's not a situation where he opened the door or did some act indicating an acquiescence to them entering the premises. In addition, the dumping out or the going through his duffel bag without a warrant or without probable cause, the law is clearly established either he did it or he didn't do it. I have some questions about that. The account that your client gave in his deposition mentioned nothing about the Jim Bannagher and then the declaration does. Can an issue of fact be created by contradicting the of course, they're having a whole new version of events from what was in the deposition? Well, if he had been asked a question at his deposition regarding the Jim Bannagher and he had given one answer and then gave a contrary answer in his declaration, then I would say, no, he cannot create an issue of fact by contradicting his deposition testimony. However, no questions were asked specifically in that area. And in addition, if the trial court or the district court had felt that had taken place, the court would have to give him an opportunity to explain the contradiction if there is a contradiction, and he'd have to make some sort of findings on the record that there was a contradiction. Here, it's the fault of the questioner in not asking questions specific enough to elicit that information. Obviously, he's testifying in his deposition that they allowed him to gather his things and fix his things up off the floor, but there was no question as to how his things got on the floor or what happened prior to that. Like I say, it's the fault of the questioner, not Mr. Ducey's fault. I'm going to save some time for rebuttal. Yes. Good morning, Your Honors. My name is Bob Christie. I'm here on behalf of Officer Matthew Lee. We've split the time up amongst the three of us. I'm planning to take eight minutes. Helen Harvey, on behalf of the city, will take five. And the attorney for West Coast, Christine Tavares, will take the remaining seven. So I'll try to be mindful of that. The issues that relate to Officer Lee, the only individual defendant officer that's part of this appeal, because the other officer was never served, he's still under the protection of the state from his bankruptcy proceeding, are whether or not there's qualified immunity that should be the basis for dismissing the claims against him under the Federal Civil Rights Act. Counsel correctly pointed out, Judge Pregerson, that there are no state law claims that have been asserted against Officer Lee. The issue for purposes of qualified immunity is framed very clearly by the two-part test that's set forth in Saussure and discussed in our brief, and I know this Court is familiar with that test, and I know Judge Graber-Ishner was involved in the Ninth Circuit decision that underlied the Supreme Court decision. The issue of whether or not there was a constitutional violation really does pull in this objective test as to whether or not there was consent to enter the hotel room and or whether or not there were exigent circumstances. And the test for both of those is an objective test. It does not look at the state of mind of the officers at the time. And I think there are two significant Ninth Circuit decisions, both of which were cited in our materials, and I think one very significant decision, particularly on the point of exigent circumstances, is Judge Gould's recent decision in May of 2004 in the United States v. Brooks case. That also was the entry into a hotel room that was a case involving an adjacent room occupant having called 911, hearing a scuffle and thinking that that might be a domestic disturbance. And that case did focus on this issue of whether or not there were exigent circumstances that justified. What's comparable in this case? They had a very old incident. A lot of time had passed since anyone had seen the plaintiff with a weapon. Why wasn't there time to get a warrant? The exigencies here, Your Honor, that I think exist objectively are, first of all, the officers responding to an incident that is reported to them. Why wasn't there time to get a warrant? Well, I'm not saying that there was not time to get a warrant. Why wasn't a warrant obtained? A warrant was not obtained in this case because at the point in time when the officers arrived to question Mr. Ducey, the exigency arose that permitted their entry at the court. What was the exigency right then and there? When they first showed up, there was no exigency, Your Honor. When they spoke with Mr. Ducey, confirmed that he was in his hotel room, allowed him to go back into his room and complete his shower, come back and open the door, they spoke to him and confirmed that they planned to interview him. He then stepped suddenly away from the door, and I submit that objectively, and again this is the test articulated very clearly by this court in the Brooks decision, objectively there was an officer safety issue that arose at that moment when he stepped away from the door and stepped into the room. And whether or not there was an officer safety issue. If he just stood there, there would be no exigency. I think that's correct, Your Honor. If he had just stood there. It was the act of stepping away into a room with a suspect who was believed to possess a loaded firearm that had displayed that firearm and, according to the witnesses, had pointed that loaded handgun in the face of one of the witnesses. The other component, and again we're under the test of whether or not an officer on the scene evaluating this information could reasonably believe that there was an exigency. He doesn't have to be right on this. The other component is whether or not there is implied consent. If they thought the guy was dangerous and he had a gun, don't you think they would have gotten an arrest warrant and a search warrant? I don't believe so, Your Honor. Did they run a make on him? Did they know who he was? I think that they did not do that. What was his business or occupation? You know, his business or occupation, I think he was employed by a bank, and I don't think that information was known to the officers. I know that's not in this record. He had a permit to carry a weapon. He did, and I don't believe the officers knew that at the time either. They could have checked that out. They could have, Your Honor. They could have. I agree with you on that. So what's the exigency? As I again indicated, I believe there's an exigency that objectively is created by this gentleman stepping back into the room at a point in time when he's known or suspected to be possessing a handgun. But he had no criminal record, did he? He did not. They didn't go there thinking that they had a situation that would require any sort of a SWAT team or any of that. This was, again, an unfolding circumstance requiring them to make split-second decisions, and it's the very kind of case that I think calls for this Court to look at qualified immunity, recognizing that the officer doesn't always have to be right at the end of the day. But I want to speak briefly to the issue of implied consent, because if you look at the Paveo v. Pagay case, 307F3, 915, which was a decision by Judge Tallman in this case, he recognized the implied consent having been given to the officer under facts that are somewhat analogous to this and, frankly, somewhat analogous to the Seventh Circuit case in Griffith, where someone had opened the door, shut the door, and there's a recognition in the case law that someone who opens the door initially to the officers and then shuts the door recognizes that there is a way to keep the officers from coming in. They then open the door a second time, step away from the door, and say nothing to the officers, either that they should not come in. That's a really broad rule. You're basically saying that any time that you open the door, you impliedly consent to people coming in if you're willing to talk to them. That seems a bit much just in normal experience. I would say that I'm not saying that that's a rule ultimately for the issue of whether or not the implied consent was granted. I'm looking at it through the window of qualified immunity. Well, let me give you an everyday example that happens in my neighborhood, and I would be shocked if anyone thought it was implied consent. Some kids come to the door and they say we're going to run laps for the arts. Would you sign our little sheet here? And I reach back and get a pen. I'd be stunned if they thought they could come wandering into my house. That's basically what you have here. That's all you've got. I respectfully disagree, Your Honor, because I think this case is closer to what Judge Gould talked about, again, in the Brooks case, which was another hotel room. It was a self-closing door where the officers, seeing the door closing, stepped in through the door. And this was after the door had been opened, shut, and then reopened. And the person stepped away from the door, saying nothing to the officers about not coming in, not making sure the door had closed behind them, and then saying nothing after the officers entered the door that they should not be in the room. None of those events occurred in this case. But it sounds like you're almost creating a presumption. Unless you tell people stay out, then you've just invited them in by just merely opening your door and talking to them. That doesn't – I just don't see that in our cases. Well, what I see, Your Honor, is case law out of this circuit that distinguishes the ultimate question about whether or not that was indeed implied consent for purposes of perhaps a suppression hearing, and whether or not that was an objectively reasonable set of facts that would allow the officers, even if later deemed to have been erroneous, to be entitled to qualified immunity. There's a footnote in, again, another recent decision by Judge Gould, the Graves v. Coeur d'Alene case, that talks specifically, and this is footnote 25, and the Graves decision is at 339 F. 3rd, 828, that recognizes the clear distinction between the criminal law test in that case of finding that there was no probable cause and still finding that the officer was entitled to qualified immunity because of the difference in that test. Well, you know, I'm starting to feel neglected. You don't read any of my cases. You know, Judge Pregerson, I actually had the honor of appearing before you on two back-to-back cases involving qualified immunity last fall, and I actually did read a lot of your cases, including the two that you decided then. I'm sorry. I don't mean to ignore you. How did I decide them? Favorable on the issue of qualified immunity towards my client. I should clean up and get at them. Which one? There were two cases, Your Honor. One was Martinez v. City of Federal Way. That involved an officer who had shot and killed a gentleman with a shotgun, and at the same moment in time, another officer had shot simultaneously. Well, you had a lot of danger over there, you know. That's right. Shotguns, they're not selling tickets to America. Dangerous country up here in the northwest. It's dangerous country up here in the northwest. I don't think so. You think it's any worse in L.A.? I'm being lighthearted, and I'm sorry. Okay. The other point I just want to quickly make, and then I'll get off the stage, is it sounds to me like the plaintiff has acknowledged that the civil rights claim of conspiracy is not well put forth against any of the city defendants. The last issue I would just raise, and it's a procedural issue, the Court, I think, very clearly did not abuse his discretion. And the Court, Judge Pregerson, you are absolutely right on the time frame of this in terms of the timing for when the motion to amend the complaint was finally filed. It was filed on the date for filing dispositive motions. Factually, Judge Graber, the discovery requests were sent out in February of 2003, answered in March of 2003, supplemented in May of 2003 with a current address for Mr. Myers. There's no evidence in the record of any attempt to serve him any time before the service was effected in July. Counsel was immediately advised that he had filed a bankruptcy proceeding, and there's never been an effort, to my knowledge, even as of today, to obtain a lifting of the stay that would permit him to go forward with that case. And it wasn't until September, literally on the day that we're filing dispositive motions, that the motion comes forward seeking to amend the complaint. I also raise this issue. If the Court looks carefully. You have these wonderful women. They'll want to speak. Okay. You're trampling on their time. I am, and I'm getting out of here. Thank you. Okay. I'm Helen Harvey, Assistant City Attorney. I represent the City of Yakima on this matter. The first issue I'd like to address is the fourth cause of action in the plaintiff's complaint, which was a cause of action titled 42 U.S.C. Section 1983-Municipal Liability. There is nothing in the record at all to support a claim of municipal liability against the City of Yakima. As the Supreme Court stated 27 years ago when it decided the Minnell case, a claim against the City cannot be founded or based on a theory of Respondent Superior. And there's nothing in the record at all to show that an action present an official policy or custom resulted in an unconstitutional tort. Judge Succo did establish a scheduling order in early December of 2002. He allowed until, I believe, August 29th for discovery, so there was a discovery period of a full almost nine months. And there would have been ample opportunity, and the plaintiff did actually initiate some discovery toward the city directed to those issues. We responded in a prompt fashion, produced documents. But when we got to this stage of summary judgment, although we did include that basis in our motion, the plaintiff at that point could not respond and did not respond with any evidence showing a policy or custom. Judge Succo wrote a very thoughtful 17-page decision, as he does with all of his cases, looked very carefully at this case and treated the parties fairly, as he always does. And he stated at page – actually, it's in the record at ER 433. He stated, quote, there's no evidence that Leah Myers arrested plaintiff on the basis of an unconstitutional policy or custom. In our appeal reply brief, we addressed this issue in a footnote, because in the plaintiff's opening brief, he had not argued that there was a Minnell claim against the city of Yakima. And then in plaintiff's reply brief before this Court, he did acknowledge he didn't address the merits of the Minnell claim, and acknowledged that he had no facts to support the claim at this time, but did add a sentence indicating this issue about the opportunity to amend the complaint and to depose Officer Meyer, which I don't believe would be an adequate basis to overturn, certainly not an adequate basis to overturn Judge Succo's summary judgment dismissing the city of Yakima. The second issue I'll briefly address is the plaintiff's motion to amend the complaint, which, as Mr. Christie stated, was filed after the close of discovery, which was in late August. It was filed on the day the dispositive motions were due. The scheduling order had set forth a clear deadline for moving to amend the complaint. The deadline for moving to amend the complaint or add parties, and that was December 31st, at the end of December of 2002. And under the standards involved, the Rule 16, which Judge Succo specifically stated in his order so that all parties were on notice, the schedule should not be modified except upon a showing of good cause and by leave of the court. And he concluded, Judge Succo concluded properly, as he stated at evidence, at the record at page 428 to 30, the court finds plaintiff's argument unconvincing for the legal and factual reasons that follow. And then he went on to discuss that for several pages. There's no evidence in the record showing what efforts the plaintiff did actually make to serve Officer Meyer. There was a requirement once the complaint was filed that that be done within 120 days. That's a clear requirement, and certainly a plaintiff understands he needs to serve all parties in the case. But there's not any evidence in the record, any affidavits showing efforts by process or any efforts at all by process servers or investigators to find the officer. There's a process under State law that would apply for publication if service cannot be effected through reasonable diligence. The record is silent on that. So for all of the reasons, we ask that the Court affirm Judge Succo's summary judgment in this matter. Thank you. Thank you. Good morning. Chris Tavares for the Yakima West Coast Center Hotel. In terms of the complaint that was filed by Mr. Ducey originally in this action, there was only one federal cause of action filed against the hotel, and that would be the third claim for relief, specifically 42 U.S. Code 1985, conspiracy to allege oil smuggling. There were no 1983 claims brought against West Coast. The only claim, civil rights claim, against West Coast was for the 1985 alleged violations. In order to be successful in a 1985 claim, the plaintiff was required to show, first of all, that there was evidence of a conspiracy, and secondly, that there was some type of racial anarchist inherent in that particular action. Mr. Ducey's claims necessarily fail because, if you look at Mr. Ducey's deposition testimony, he specifically stated that he was not mistreated by the police officers, West Coast, Bailey, or St. Martin in any manner. There was no evidence that any of his claims against the West Coast hotel, the hotel manager, Mr. Bailey, or Kevin St. Martin were based on race. In fact, the only racially charged language that was exchanged was between the two African Americans out on the parking lot, and so necessarily his claim must fail on that basis alone. Secondly, there has been no evidence. I thought we were told by counsel to the appellant that the appellant was not What Mr. Ducey did in his appellate brief was try to change it and allege 1983 claims against West Coast and bringing them in, but the complaint only has claims against the hotel, civil rights claims, 1985 claims. There are no 1983 claims against the hotel in any manner. In terms of the conspiracy, there are no facts that Mr. Ducey has set forth to uphold his claim for conspiracy. I have not seen any facts which he created, issue of facts sufficient to defeat a summary judgment motion, which was upheld in the lower court. Specifically, he has not brought forth any specific facts to show that there was a meeting of the minds between the hotel employees or the officers. Mr. Bailey, who was the hotel manager that evening, I'm sorry, that morning, he was fearful because he knew a person in his hotel had a gun. He had several other people who were staying at the hotel. His only role in this was to contact the police and ask them to investigate this matter. As indicated in our moving papers and also in our papers that we submitted to the court, there must be a specific meeting of the minds in order to uphold a claim for conspiracy. And in this case, the plaintiff has certainly failed. In terms of the complaint, again, that was not requested until 13 months later. It was two days after we filed a motion for summary judgment. Certainly, that was not in a timely manner and the Court did not abuse its discretion. Thank you. Thank you. Rebuttal. I don't think any of the officers ever claimed that they entered the hotel room because of an exigency. Certainly, you cannot compare a 911 call type case where the police have a community function and have to act quickly because of their responsibility with respect to 911 calls. You cannot compare that to a situation where they're at the door or the threshold of a person's room. Officer Lee did not claim that he entered the hotel room because there was an exigency or that he feared for his safety or that he thought Mr. Ducey was going for a weapon. He claimed that he entered the hotel room because Mr. Ducey expressly gave him permission to do so. Mr. Ducey says that's not true. That creates an issue of fact. Additionally, there's a big difference between opening the door so that you can get a better view of what someone's doing and actually crossing the threshold and entering the premises and sitting down on someone's bed and having a conversation and going through their belongings. So that's a completely different situation. With respect to the bankruptcy that Mr. Myers filed, if Mr. Myers believed that Mr. Ducey was a creditor, he had an obligation to list him as a creditor on the bankruptcy. He did not do that. Counsel referred to the fact that we should have moved for lifting of the stay. The bankruptcy had been completely adjudicated and dismissed prior to this summary judgment being decided, so there was no reason to move for any type of a stay. There's no reason to move for any type of a stay now. We were not informed of that fact. We did not learn that fact until we started doing research on PACER that this had taken place. So at the time that we attended the summary judgment hearing, we did not realize that the bankruptcy had been completely closed. I also noticed that counsel for the hotel did not mention the malicious prosecution claim and counsel's argument specifically was with respect to the conspiracy. If Mr. Bailey, who was the hotel manager, feared that he had a dangerous person in his hotel, and that is the reason that he behaved the way he did, he would not have allowed Mr. Ducey to stay past noon. He would not have encouraged him to stay past noon, and he would have called the police prior to Mr. Ducey's checkout time. But what he did was he summoned his employees to the hotel on their day off, denied it when he was opposed that that ever happened. He did this in the morning. There had to be a passage of time where Mr. Bailey and the hotel employees had a conversation, had a discussion. They don't call the police until almost 3 o'clock in the afternoon. The police don't arrive until almost 4 o'clock in the afternoon. That is completely inconsistent, and that raises issues of material fact with respect to what their true motives was. But that's inconsistent with what you would do if you felt that you had an individual in your hotel who you thought was dangerous and your actions were simply to protect the patrons of the hotel. Thank you. Thank you. Thank you. Household matter will stand submitted. And we'll go on to the next matter.
judges: Pregerson, Graber, Gould